<div style="color:red; text-align:center;">CORRECTED</div>

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1553V
UNPUBLISHED

| | |
|---|---|
| TRAVIS LUTZ,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: October 11, 2022<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Ruling on Entitlement;<br>Table Injury; Shoulder Injury Related<br>to Vaccine Administration (SIRVA) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Andrew Henning*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On November 9, 2020, Travis Lutz filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a left shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on October 3, 2018. Petition at 1, ¶¶ 1-3. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons set forth below, I find the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination, and that he has satisfied the other requirements

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

of a Table shoulder injury related to vaccine administration ("SIRVA"). Petitioner is entitled to compensation under the Vaccine Act.

### I.     Relevant Procedural History

Within a month of filing his petition, Mr. Lutz filed the medical records and a signed declaration[3] as required by the Vaccine Act. Exhibits 1-10, filed Nov. 20, 2020, ECF Nos. 6-7; *see* Section 11(c). On February 26, 2021, the case was activated and assigned to the SPU (OSM's adjudicatory system for attempting to resolve cases deemed likely to settle). ECF No. 13.

On May 7, 2021, Petitioner filed additional signed declarations from his wife and himself[4] and an amended petition, providing further details regarding his alleged SIRVA injury. Exhibits 11-12, ECF No. 16; Amended Petition, ECF No. 18. Approximately six months later - on November 17, 2021 - he filed updated medical records and a status report indicating he provided a demand and supporting documentation to respondent. Exhibits 13, ECF No. 22; Status Report, ECF No. 25. On February 23, 2022, Respondent filed a status report indicating he was willing to engage in litigative risk settlement discussions. ECF No. 27.

Less than three months later, however, the parties had reached an impasse. Status Report, filed June 20, 2022, ECF No. 32. Respondent filed his Rule 4(c) Report setting forth his objections to compensation on September 27, 2022. ECF No. 36. Specifically, he argues that Petitioner "has not clearly established that he suffered the onset of his left shoulder pain within 48 hours of vaccination." *Id.* at 6.

The matter is now ripe for adjudication.

### II.    Factual Findings and Ruling on Entitlement

#### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a

---

[3] Rather than an affidavit, the statement provided by Petitioner is a declaration signed under penalty of perjury as required pursuant to 28 U.S.C.A. § 1746.

[4] These declarations were also signed under penalty of perjury as required pursuant to 28 U.S.C.A. § 1746.

2

whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the

---

[5] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

3

shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

## B. Factual Finding Regarding QAI Criteria for Table SIRVA

Respondent contests only the second criterion - whether the onset of Petitioner's pain occurred within 48 hours of vaccination. Rule 4(c) Report at 6-7; *see* 42 C.F.R. § 100.3(c)(10)(ii); *see also* 42 C.F.R. § 100.3(a)(XIV)(B) (requiring the first symptom or manifestation of onset within 48 hours of vaccination for a SIRVA injury following receipt of a flu vaccine). Emphasizing that Petitioner used terms such as "since" and "after" when reporting his pain onset and indicated that his pain began within six hours of vaccination in a later entry, Respondent insists that Petitioner has not establish a pain onset within 48 hours. Rule 4(c) Report at 6. He also argues that I may not make a finding regarding onset based upon the claims of [P]etitioner alone, unsubstantiated by medical records, or by a credible expert medical opinion." *Id.* at 6-7 (citing Section 13(a)(1) and *Lett v. Sec'y of Health & Hum. Servs.,* 39 Fed. Cl. 259, 260 (1997)).

I do not find Respondent's arguments to be persuasive. The contemporaneously created medical records show (from the time he first sought treatment on October 30, 2018) that Petitioner consistently provided descriptions of pain onset within 48 hours of

4

vaccination. Without fail, he attributed his injury to the flu vaccine he had received on October 3, 2018. *Id.* And the record contains a dearth of evidence supporting a later pain onset.

Thus, when Petitioner first reported his left shoulder pain on October 30, 2018, he indicated "that the [sic] got his Flu shot on 10/3 and his shoulder has been hurting since then." Exhibit 4 at 5. When next seen for left shoulder pain for five months - since October, Petitioner indicated the pain "[s]tarted after getting a flu shot." Exhibit 2 at 37. At a visit with an orthopedic surgeon on January 9, 2020 – more than 15 months post-vaccination, Petitioner again linked his pain to the flu vaccine he received, indicating "[h]e began to have pain approximately 6 hours after the injection."

The term "after" is less clear, but "since" implies an immediate pain onset. Definitions of the word "since" include the following: 1) "from a definite past time until now" and 2) "from a particular time in the past until a later time."[6] And, although the more specific time frame Petitioner later provided deviated slightly from his earlier reports of more immediate pain, this timing – six hours post-vaccination - still falls well within the 48 hours required for a Table SIRVA injury. Additionally, the account was provided in January 2020 – more than 15 months post-vaccination – meaning it inherently deserves a bit less weight than more contemporaneous evidence.

Respondent appears to deem the Petitioner-provided statements contained in the contemporaneously created medical records as equivalent to an "unsupported" injury claim of the sort that Section 13(a)(1) of the Act defines as not a proper basis for recovery. Rule 4(c) Report at 6-7. However, this is an incorrect characterization. Although these entries were based upon information provided by Petitioner, they still should be afforded greater weight than more current representations, as they were uttered contemporaneously with Petitioner's injury for the purposes of obtaining medical care. The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied <u>to</u> or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by Petitioner.

---

[6] These definitions can be viewed at the Merriam-Webster and Cambridge Dictionary. *See* (www.merriam-webster.com/dictionary/since; https://dictionary.cambridge.org/us/dictionary/english/since) (last visited on Oct. 3, 2022).

I thus find there is preponderant evidence to establish Petitioner suffered left shoulder pain within 48 hours of vaccination – meaning Petitioner has satisfied the second criterion for a Table SIRVA injury.

Respondent does not dispute any other Table SIRVA requirements, and the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii)-(iv). A thorough review of the record in this case does not reveal a prior or current condition or abnormality which would explain Petitioner's condition or pain and limited range of motion ("ROM") other than in Petitioner's injured left shoulder. Thus, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of his injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

### III. Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master